## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA
    PLAINTIFF,

**CASE #: 12-20218**

vs.

**HON. SEAN F. COX**

TIMOTHY IVORY CARPENTER
    DEFENDANT.

| | |
|---|---|
| AUSA Kenneth R. Chadwell (P39121) | Harold Gurewitz (P14468) |
| U.S. Attorney's Office | Counsel for Defendant |
| 211 W. Fort Street, Suite 2001 | Gurewitz & Raben, PLC |
| Detroit, MI 48226 | 333 W. Fort Street, Suite 1400 |
| (313) 226-9698 | Detroit, MI 48226 |
| | (313) 628-4733 |

### MOTION IN LIMINE TO EXCLUDE LAY AND EXPERT TESTIMONY

Now comes Defendant Timothy Carpenter by his attorney, Harold Gurewitz, and respectfully requests, pursuant to FRE 403, 701, and 702, that this Court enter an order excluding expert testimony regarding the operation of cell towers.  For his reasons, Defendant relies on the attached brief.

Pursuant to LR 7.1, counsel for Defendant Carpenter sought concurrence on this motion. Concurrence was denied.

Respectfully Submitted,

**GUREWITZ & RABEN, PLC**

By:    s/Harold Gurewitz
    333 W. Fort Street, Suite 1400
    Detroit, MI 48226
    (313) 628-4733
    Email:  hgurewitz@grplc.com
Date:November 22, 2013    Attorney Bar Number:  14468

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
      PLAINTIFF,

                              CASE #: 12-20218

vs.

                              HON.  SEAN F. COX

TIMOTHY IVORY CARPENTER
      DEFENDANT.

| | |
|---|---|
| AUSA Kenneth R. Chadwell (P39121) | Harold Gurewitz (P14468) |
| U.S. Attorney's Office | Counsel for Defendant |
| 211 W. Fort Street, Suite 2001 | Gurewitz & Raben, PLC |
| Detroit, MI 48226 | 333 W. Fort Street, Suite 1400 |
| (313) 226-9698 | Detroit, MI 48226 |
| | (313) 628-4733 |

## BRIEF IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE LAY AND EXPERT TESTIMONY

### I.   INTRODUCTION

As part of its case-in-chief, the Government will likely seek to introduce the testimony of Special Agent Christopher J. Hess regarding cell site analysis of cell phones the Government will attempt to associate with Timothy Carpenter and Timothy Sanders. Based upon the discovery Defendant Carpenter received on November 12, 2013, Special Agent Hess apparently will testify that Defendant Carpenter's cell sites were in the geographic areas consistent with the robberies on December 13 (Count 1) and December 18, 2010 (Count 3), and March 4, 2011 (Count 7) and April 5, 2011 (Count 9) and that Defendant Sanders' cell sites were consistent with the geographic area consistent with the robbery scene located at 2553 Parkman, Warren, Ohio on March 4, 2011. This Court should rule that such testimony exceeds the scope of FRE 701, does not meet the requirements of FRE 702, and, due to the untimely nature of the production of this evidence, that this testimony is unfairly prejudicial and should be excluded pursuant to FRE 403.

II.   STATEMENT OF FACTS

On November 12, 2013, Defendant Timothy Carpenter received additional discovery

from the Government. As part of this discovery, Defendant received a document titled "Cellular

Analysis" (hereinafter "report") by Special Agent Christopher J. Hess. (Exhibit A, Cellular

Analysis and CV of SA Hess).

According to the report, as part of the investigation of the charges in this case, Special

Agent Vicente Ruiz requested a cell site analysis of cell phones which are alleged to have

belonged to Defendants Timothy Carpenter (313-412-6845) and Timothy Sanders (313-579-

8507). (Exhibit A). The purpose of this analysis was to conduct a "cell site analysis of the target

phones to determine the geographic area where the target phones were located in relation to

incident date(s) and time(s)." (Exhibit A, pg 2).

Prior to stating the results of the analysis, the report sets forth a series of "basic principals

utilized in record analysis." These are set into two categories: (1) technology and (2) cell sites

and sectors. (Exhibit A, pg 5). Hess's "principles"apparently are used in the basis for his

findings. Some of his "basic principles," as he described them, include:

- The phone "sees" other towers around the SERVING CELL and will constantly measure those signal strengths. However the phone will not randomly reselect to an adjacent tower unless the tower is on its "neighbor list" which is controlled by the network service provider. This allows the network to accurately manage and control the subscribers.

- As the phone moves, it will choose a new serving cell based on the signal strength.

- Cell towers (also known as Cell Sites or Base Transceiver Stations) come in all shapes and sizes and can be located anywhere.

- A typical cell tower has three, 120 degree sectors. The service provider sometimes labels the sectors numerically, such as 1, 2, 3, or Alpha, Beta, Gamma.

-2-

Sector 1 (or Alpha) typically covers the norther sector of the tower, 2 (east), 3 (west).

Hess's report then concludes a "review of the Call Detail Records (CDRs) revealed that there was call activity during the period covered by the records." Regarding the cell phone activity of the phone number which allegedly belonged to Timothy Carpenter (313-412-6845), SA Hess concluded that it "utilized cell sites in the geographic area consistent with the robbery scenes" on December 13, 2010 (Count 1), December 18, 2010 (Count 3), March 4, 2011 (Count 7), and April 5, 2011 (Count 9). (Exhibit A, pg 8). He also concluded that the phone which belonged to Timothy Sanders was also found to be active in the geographic area consistent with the robbery scene on March 4, 2011. (Count 7 - Warren, Ohio Robbery).

The report also includes maps depicting the location of the cell towers/sites and the location of the alleged robberies.

The Government has not provided an explicit notice that it intends to call SA Hess as an expert witness. However, it is believed that is their intent.

III.   DISCUSSION

A.   THE UNTIMELY PRODUCTION OF SA HESS'S REPORT IS UNFAIRLY PREJUDICIAL AND FAILS TO MEED THE REQUIREMENTS of FRCrP 16.

Defendant received the discovery which relates to the testimony Special Agent Hess will provide on November 12, 2013, just three weeks before trial. The Fourth Superseding Indictment was returned on July 10, 2013. Defendant Carpenter's final pretrial conference was on October 28, 2013. Given this tardy notice, deficiencies in the notice are more prejudicial. Special Agent Hess's testimony goes far beyond the knowledge that is readily accessible to any ordinary person and is clearly specialized information. *See United States v. Yeley-Davis*, 632 F3d 673, 684 (10th

-3-

Cir. 2011)("testimony concerning how cell phone towers operate constitute[s] expert testimony because it involve[s] specialized knowledge not readily accessible to any ordinary person.").

The Government's failure to provide timely notice of any kind of testimony is unfairly prejudicial to Mr. Carpenter because the last-minute disclosure by the Government leaves the Defendant without the tools to effectively cross-examine SA Hess regarding potentially significant evidence. The evidence should be excluded for this reason.

The Government also has not provided an explicit notice that it will present expert testimony, as required by FRCrP 16. FRCrP 16(a)(G) provides that "the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, and 705." In addition, the summary "must describe the witness's opinions, *the bases and reasons for those opinions*, and the witnesses qualifications." *Id*. (Emphasis added). The rule is "intended to minimize the surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Figueroa-Lopez*, 125 F3d 1241, 1246 (9th Cir. 1998)(internal citations omitted).  Furthermore, the Government may not proffer expert testimony under the guise of lay testimony nor may it use Rule 701 as a way to avoid the notice requirements of FRCrP 16. *See* FRE 701 Advisory Committee's Note (2000).

In addition, FRE 403 provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger" of unfair prejudice.

Here, the Government's disclosure submitted about 3 weeks before trial does not provide notice of the kind required by FRCrP 16. While the "Cellular Analysis" and SA Hess's CV may

-4-

provide some notice of a summary of his proposed testimony and his qualifications, the report

fails to provide Defendant Carpenter with the bases and reasons for those opinions, both

essential elements of notice required by the rule. Hess's report merely states that it relies on

"basic principles" of cell site analysis, without articulating any information regarding the source

or reliability of his principles or opinion. It also fails to provide any information describing the

methodology he may have used to reach his conclusions. This is insufficient as a matter of law.

### B. AGENT HESS'S PROPOSED TESTIMONY CONCERNING THE OPERATION OF CELL TOWERS, AS DESCRIBED IN HIS ANALYSIS, IS NOT SUFFICIENTLY RELIABLE TO QUALIFY AS EXPERT TESTIMONY.

FRE 702 governs the admissibility of expert testimony. It has several requirements. First,

expert testimony must concern "scientific, technical, or other specialized knowledge" that will

"assist the trier of fact to understand the evidence or to determine a fact in issue." FRE 702(a).

Second, the witness must qualify as an expert from "knowledge, skill, experience, training, or

education." FRE 702. Finally, the testimony only may take the form of "an opinion or otherwise"

if the testimony is "based upon sufficient facts or data," is produced from "reliable principles and

methods," and the expert has "applied the principles and methods reliably to the facts of the

case." FRE 702(b)-(d). The underlying purpose of Rule 702 is to engage the trial judge in an

important gate-keeping function to exclude evidence that is either unreliable or unhelpful. FRE

702 (Advisory Committee Notes). It is the Defendant's request by this motion that the Court

should exclude the proposed testimony based on the analysis of these factors.

In *Daubert v. Merrel Dow Pharmaceuticals, Inc*., the Supreme Court enumerated four

factors to help a trial court assess whether scientific reasoning or methodology is valid and

properly applied to a case. 509 US 579, 592-593 (1993). These factors include: (1) "whether it

can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) whether there is a "known or potential rate of error" and "standards controlling the techniques operations;" and (4) whether the methodology has received "general acceptance" within the scientific community. *Id* at 593-594.

Admissibility of expert testimony of the kind proposed by the Government here is controlled by rules and case law, including FRE Rules 403 (excluding relevant evidence for prejudice), 702 (testimony by expert witness), 703 (bases of an expert's opinion testimony), 704 (opinion of an ultimate issue) and 705 (disclosing of facts or data underlying an expert's opinion).

It is the court's responsibility to consider the evidence first as a gatekeeper, to make "a , preliminary assessment of whether the reasoning or methodology underlying the testimony . . . is valid and whether that reasoning or methodology properly can be applied to the facts at issue." *Daubert, supra*, 509 US at 592-93; *United States v. Harris,* 192 F3d 580-89 (6th Cir. 1999). To be admissible, the testimony must be relevant and reliable. *United States v. Lopez-Medina,* 461 F3d 724 (6th Cir. 2006).

Even if the testimony might be relevant, the testimony should "be carefully circumscribed to ensure the expert does not usurp either the role of the judge in instructing on the law or the role of the jury in applying the law to the facts before it." *United States v. Locascio*, 6 F3d 924, 939 (2nd Cir., 1993). An agent expert witness impermissibly goes beyond his intended purpose when he acts, in effect, as a summary witness for the prosecution. *United States v. Dukagjini*, 326 F3d 45, 55 (2nd Cir., 2003). Further, expert testimony crosses the line when, for example, there is a danger that the expert has relied upon hearsay statements made

during the course of the Government's investigation, including potentially otherwise inadmissible statements by co-defendants or co-conspirators. The expert agent's testimony will then violate the Confrontation Clause of the Sixth Amendment. *United States v. Mejia*, 545 F3d 179, 192 (2nd Cir., 2008) (reversing the defendant's conviction because agent expert testimony violated the Federal Rules of Evidence and the Confrontation Clause of the Sixth Amendment).

In the present case, the proposed testimony of Special Agent Hess fails to meet the requirements of Rule 702 and *Daubert*. As set forth above, the government recently provided the Defendant with a report titled "Cellular Analysis" by Special Agent Christopher J. Hess. The report, while presenting what it calls "basic principals utilized in record analysis", fails to provide any details regarding bases and reasons for Agent Hess's conclusions. It does not provide any information regarding reliability of the methodology he used to arrive at his conclusions. In addition, it contains no indication from the report that the techniques used to locate the call activity from the cell towers has been subjected to any kind of peer review. *See Kumho Tire Co., v. Carmichael*, 526 US 137, 152 (1999)(Expert testimony must "be the product of reliable principles and methods.").

Therefore, because the testimony fails to fulfill the requirements of Rule 702 and *Daubert*, Defendant Carpenter requests that this Court exclude expert testimony related to the operation of cell towers.

### C.    TESTIMONY REGARDING THE OPERATION OF CELL TOWERS IS NOT ADMISSIBLE AS LAY OPINION TESTIMONY.

FRE 701 governs the admissibility of lay opinion testimony. Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the

-7-

> witness's testimony or to determining a fact in issue; and (c) not
> based on scientific, technical, or other specialized knowledge
> within the scope of Rule 702.

The burden is squarely on the proponent to provide an adequate foundation.

In 2000, Rule 701 was amended "to foreclose lay witness testimony 'based on technical, or other specialized knowledge' – testimony more properly given by a qualified expert." *United States v. White*, 492 F3d 380, 400 (6th Cir. 2007) (citing FRE 701 Advisory Committee's Note, 2000); see also *United States v. Freeman*, No. 11-1798, 2013 U.S. App. LEXIS 18976 (6th Cir. Sept. 13, 2013). This amendment was intended to preclude parties from surreptitiously circumventing "reliability requirements set forth in Rule 702 . . . through the simple expedient of proffering an expert in lay witness's clothing" and to ensure that a party is not evading the requirements of FRCrP 16 "by simply calling an expert witness in the guise of a layperson." *Id*. at 401.

"[T]he distinction between lay and expert testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialist in the field." FRE 701 (Adv. Comm. Notes (2000 Amend.)). Based upon this principal, the Tenth Circuit has held that it was error for a trial court to admit lay testimony from a police officer about how cell sites processed calls. *United States v. Yeley-Davis*, 632 F3d 673, 685 (10th Cir. 2011). The court, in *Yeley-Davis*, held that "testimony concerning how cell phone towers operate constitute[s] expert testimony because it involve[s] specialized knowledge not readily accessible to any ordinary person." *Id* at 684.

Similar to the testimony in *Yeley-Davis*, the testimony of Special Agent Hess, which is like to cover the conclusions and contents of the "Cellular Analysis," is clearly not within the

experience of average jurors. *United States v. Thomas*, 74 F3d 676, 682 (6th Cir, 1996),

abrogated on other grounds by *General Elec. Co. v. Joiner,* 522 US 136, 143 (1997). The type of

specialized knowledge contained in the report, which is based upon the operation of cell phone

towers, is not readily accessible to any ordinary person and should be excluded under Rule 701.

IV.    CONCLUSION

For each of these reasons, Defendant Timothy Carpenter requests that this Court enter an

order excluding all testimony related to the operation of cell phone towers because the

Government's untimely and deficient disclosure concerning cell tower analyses fail to satisfy the

requirements of FRCrP 16 and Rules 701, 702, 704, and 705.

Respectfully Submitted,

**GUREWITZ & RABEN, PLC**

By:    s/Harold Gurewitz
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
Email:  hgurewitz@grplc.com
Date:November 22, 2013          Attorney Bar Number:  14468

CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2013, I electronically filed the foregoing paper with the
Clerk of the Court using the ECF system which will send notification of such filing to all parties
of record.

/s Harold Gurewitz (P14468)
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1400
Detroit, MI 48226
(313) 628-4733
email: hgurewitz@grplc.com

-9-