UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

        Plaintiff,                      CRIMINAL NO. 12-20218

v.                                 HON. SEAN F. COX

TIMOTHY IVORY CARPENTER and
TIMOTHY MICHAEL SANDERS,

        Defendants.
_____/

## THE UNITED STATES' COMBINED BRIEF AND RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE

### Introduction

Defendant Timothy Carpenter is charged with six counts of Robbery Affecting Interstate Commerce along with six counts of Using or Carrying a Firearm During a Federal Crime of Violence, as an aider and abettor, in violation of *18 U.S.C. §§ 1951 and 924(c)*. Carpenter's half-brother and co-defendant, Timothy Sanders, is charged with two robbery counts and two attendant firearm counts, one of which (counts 7 and 8) is shared with Carpenter. A jury trial is scheduled for December 3, 2013. Defendants have filed several motions *in limine,* to which the government responds as follows.

**Discussion**

A. <u>Carpenter's Motion Pursuant to *FRE 401, 403, 404(b)* (Doc. # 203)</u>

Timothy Carpenter has moved to preclude the admission of evidence showing that he was involved in criminal activity other than the robberies charged in the indictment and requesting that government witnesses be admonished by the Court not to testify about such information. The government has no objection to this motion. In fact, during trial preparation, government counsel has directed every witness who has information about other criminal activity committed by Carpenter or Sanders not to mention this information during their testimony. The government takes no position on whether the Court should also individually admonish each witness prior to their testimony.

B. <u>Sanders' Motion to Exclude Certain Specified Evidence (Doc. # 199)</u>

Similar to Carpenter's motion discussed above, Sanders seeks to exclude mention of his state murder conviction, other uncharged robberies, and statements of co-defendant Carpenter implicating Sanders during the government's case in chief. Sanders also seeks to prevent the admission of a composite of seven photographs (depicting government witnesses Dismukes, Holland and Heard), which Sanders refers to as Government Exhibits 1 through 7, but which are actually listed together as Government's Exhibit 11. *See* List of Government

Exhibits. Sanders also seeks to exclude from evidence Government's Exhibit 56, a letter written by government witness Michael Green about the retaliation he fears will occur because of his cooperation. Defendant Carpenter joins in this motion. (Doc. # 214) The government does not object to this motion, with a few caveats. First, should defendant Sanders take the stand he would be subject to cross-examination on his state murder conviction under *Federal Rule of Evidence 609*. Second, should defendant Carpenter take the stand, he would be subject to cross-examination about his prior incriminating statements under the terms of his use immunity agreement with the government. Carpenter's live testimony would eliminate any *Bruton* issue as well since he would also be subject to cross-examination by Sanders.

   C. <u>Sanders' Motion to Suppress Cell Phone Data (Doc. # 196)</u>

Sanders has moved *in limine* to suppress the cell phone data as evidence against him. Carpenter has joined in this motion. (Doc. #'s 214, 216) The government will present evidence at trial through FBI Special Agent Chris Hess that, on March 4, 2011, defendant Sanders' cellular telephone, number 313-579-8507, was located in the geographic area consistent with the robbery charged in count 7: Radio Shack located at 2553 Parkman Road in Warren, Ohio. On June 7, 2011, the government applied for and obtained a court order under *18 U.S.C. § 2703* for toll records, call detail records, and cell/site sector (physical addresses) information for Sanders' telephone for the period December 1, 2010 to

June 7, 2011. (A copy of the Application and Order is attached hereto as Exhibit A).

The government will also present evidence at trial through SA Hess that on December 13, 2010, December 18, 2010, March 4, 2011 and April 5, 2011, defendant Carpenter's cellular telephone, number 313-412-6845, was located in the geographic area consistent with the robberies charged in counts 1, 3, 7 and 9. On May 2, 2011 and June 7, 2011, the government applied for and obtained court orders under section 2703 for toll records, call detail records, and cell/site sector (physical addresses) information for Carpenter's telephone for the period December 1, 2010 to June 7, 2011. (Copies of these applications and orders are attached hereto as Exhibits B and C.)

Congress has provided that stored business records such as these, not including the contents of any communications, may be obtained through a court order as follows:

> A court order for disclosure under section (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the government entity offers specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought, are relevant and material to an ongoing criminal investigation.

18 U.S.C. § 2703(d). Sanders argues in his motion that this provision of the Stored Communications Act is unconstitutional and should be struck down as a violation of the Fourth Amendment. Sanders is unable to cite a single Circuit Court of Appeals that agrees with his position.

4

The Sixth Circuit has previously considered and rejected the arguments presented by Sanders. In *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012), DEA agents obtained a court order for subscriber information, cell site information, and GPS real time location and "ping" data from defendant's cellular telephone used to track him to a drug distribution meeting. In affirming the district court's refusal to suppress the evidence as a violation of the Fourth Amendment, the Sixth Circuit held that the defendant "did not have a reasonable expectation of privacy in the data given off by his voluntarily procured pay-as-you-go cell phone." *Id*. at 777. Similarly, the *Skinner* court reaffirmed that there is no legitimate expectation of privacy in the cell site data itself because "the cell site data is simply a proxy for [the defendant's] visually observable location." *Id*. at 779 (quoting *United States v. Forest*, 355 F.3d 942, 951-52 (6th Cir. 2004)). Finally, even if section 2703(d) were found to be unconstitutional in this case, the evidence should not be suppressed because the agents in this case relied in good faith on the Stored Communications Act in obtaining the evidence. *See United States v. Warshak*, 631 F.3d 266, 288-89 (6th Cir. 2010)(evidence obtained in violation of the Fourth Amendment not subject to the exclusionary rule where officers relied in good faith upon the SCA).

Sanders also claims that the government did not meet the "reasonable grounds" standard of section 2703 prior to obtaining the evidence. On the

contrary, the application in support of the order stated that the FBI was investigating a series of armed robberies at Radio Shack and T-Mobile stores between December 2010 and March 2011 in Michigan and Ohio, which were violations of *18 U.S.C. § 1951*. Further, a cooperating defendant had implicated himself and fifteen other individuals, including Timothy Sanders and Timothy Carpenter, as participants in the robberies, and provided his own cellular telephone number and numbers for his co-conspirators. Historical call detail records had revealed that calls were made around the time of the robberies. These facts certainly meet the "diminished standard" of proof applicable to section 2703 which "falls short of probable cause." *Warshak*, 631 F.3d at 291 (finding section 2703 application mentioning nature of investigation and that emails were used sufficient reasonable grounds of relevance and materiality to ongoing criminal investigation).

    D.    <u>Carpenter's Motion to Exclude Lay and Expert Testimony (Doc # 211)</u>

Carpenter also moves *in limine* to exclude the government's cell site data evidence, claiming that (1) notice of such evidence to him was untimely, (2) he has not received a sufficient description of such expert testimony, and (3) the proposed testimony does not meet the requirements for expert testimony under *Federal Rule of Evidence 702*. Sanders joins in this motion. (Doc. # 215)

On April 15, 2013, the government filed a Discovery Notice informing Carpenter that it would be presenting an expert witness in the area of "cell tower location analysis" and also referencing evidence involving "telephone call records and location data." (Doc. # 89) On August 16, 2013, the government filed an identical notice informing Sanders of this evidence. (Doc. # 150) On October 28, 2013, this Court held a status conference to discuss the scheduled December 3, 2013 trial. When defendants Carpenter and Sanders complained that they needed the cell phone location data analysis in sufficient time to hire their own expert, the Court ordered the government to produce Special Agent Hess' report by November 7, 2013. (Doc. # 180) The government met that deadline. No formal motion to adjourn the trial has been made by either defendant. At the status conference, the Court also referred the defendants to recent testimony from SA Hess in another case as well as an expert witness called by the defense to rebut Hess' testimony. On November 22, 2013, defendant Sanders filed a witness list identifying an expert witness to rebut the testimony of SA Hess. Carpenter joined in that witness list.

(Doc. # 210) Accordingly, the government has provided timely notice of SA Hess' testimony sufficiently in advance of trial to permit defense counsel to challenge and rebut the testimony.

*Federal Rule of Criminal Procedure 16(a)(1)(G)* provides that the government must "give to the defendant a written summary of any testimony that the government intends to use under Rule[] 702 [which] must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." The government complied with this rule in full on November 7, 2013 when it produced 13 pages of charts and analysis together with SA Hess' curriculum vitae to defense counsel. (A copy of these materials is attached to Carpenter's motion.)

Finally, as previously recognized by this Court in *United States v. Reynolds*, Criminal No. 12-20843, the cell site analysis testimony by SA Hess does meet the requirements of *Federal Rule of Evidence 702*, which provides that a witness may offer expert opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon scientific facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence "both rests on a reliable foundation and is relevant to the task

8

at hand." *Daubert v. Merrill Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579, 597 (1993). "The trial judge must determine at the outset . . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. "One key consideration is 'whether the reasoning or methodology underlying the testimony is scientifically valid.' The inquiry is 'a flexible one,' and 'the focus ... must be solely on principles and methodology, not on the conclusions they generate.'" *Newell Rubbermaid, Inc. v. Raymond Corp*, 676 F.3d 521, 527 (6th Cir. 2012), quoting *Daubert* at 592-593, and 594-95. "An expert who presents testimony must "employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Newell Rubbermaid, Inc.* at 527, quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

In *Daubert*, the Supreme Court set out four factors the court may consider when assessing the reliability of an expert's methodology, including (1) whether the theory is based on scientific or other specialized knowledge that has been or can be tested; (2) whether they theory has been subject to peer review; (3) the known or potential rate of error and the existence of standards controlling the theory's operation; and (4) the extent to which the theory is generally accepted in the relevant community. *Id*. at 593-94. Although *Daubert* identified a number of potential considerations for determining reliability, this Court has "wide latitude" in "deciding how to test an expert's reliability," and must be afforded "considerable

leeway in deciding . . . how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.,* 526 U.S. at 137. The Court need not follow one particular method for deciding how to test an expert's reliability, nor does this decision even have to take place at a preliminary hearing. *Id.; see also Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999) ("[T]he trial court is not required to hold an actual hearing to comply with *Daubert* …")

### 1. Special Agent Hess is qualified to testify as an expert

Agent Hess has been a special agent with the FBI since April of 2004. He is currently assigned to the violent crimes squad and is responsible for investigating criminal enterprises, armed robbery, serial homicide, and kidnappings. In 2005 and 2006, Agent Hess began working with cell phone records in criminal investigations. In 2006 and 2007, he began to receive formal training in working with cell phone records. Since that time, Agent Hess has received over 500 hours of training and instruction in historical cell site analysis. In 2010, Agent Hess was also selected to be one of the ten original founding members of the FBI's Cellular Analysis Survey Team (CAST). CAST is a highly-qualified group of federal law enforcement agents who are experts in the field of historical cell site analysis. Currently, Agent Hess spends approximately 50 to 60 percent of his time analyzing cell phone records. SA Hess also trains federal, state and local law enforcement agencies in the analysis of historical call detail records.

Agent Hess has testified as an expert in historical cell site analysis in over 25 criminal trials. In the Eastern District of Michigan, he provided expert testimony in *United States v. Herman Norman Johnson* (05-80337), *United States v. Roy West, et al* (06-20185), *United States v. Robert McDonel, et al* (07-20189), *United States v. Abel Ruiz* (10-20112) and *United States v. Donald Reynolds,* (12-20843). Agent Hess has also testified as an expert in trials in the Western District of Michigan, District of Rhode Island, and Eastern District of Virginia.

The data relied upon by Agent Hess to formulate his opinions (*i.e.* the cell tower locations and phone call transmission records) are routinely relied upon, not just by law enforcement, but also by the service providers themselves. Agent Hess will testify regarding how cellular networks operate and that the networks need to know the general location – specifically, the cell tower and sector being used by the phone – to connect incoming and outgoing calls. Based on this extensive training and experience, Agent Hess is qualified to provide testimony concerning the operation of cellular telephone towers, how cellular telephones connect to those towers and, in particular, how the connection of cellular phones to a tower can reveal the location of the operator of that cellular telephone.

### 2. Admissibility of cell site evidence and analysis

Cellular telephone technology and location information based upon which cell tower handled a particular call is admissible at trial. *United States v. Benford*, 2010 WL 2346305 (N.D. Ind. June 8, 2010) (copy attached), slip op. at 2. In

*Benford*, the trial judge denied a defense motion to exclude the testimony of the government's expert witness, finding the testimony to be both reliable and relevant. At the *Daubert* hearing, the government proffered that the cell site data obtained from the defendant's cellular phone provider revealed the general vicinity of where a cell phone was located at a particular point in time by identifying which cell tower communicated with the cell phone while it was turned on. *Id.* at *6-7. In that case, the cell site data showed that the defendant was in Chicago and not in Indiana as she claimed, thereby refuting her boyfriend's (the defendant) alibi. The court concluded that such evidence was relevant and the expert's full range of experience and training made his testimony reliable, and rejected a claim that his methodology had not been subject to peer review or that he did not know the potential rate of error associated with his methodology.

Cellular tower site analysis constitutes a reliable methodology. *United States v. Tutstone*, 525 Fed. Appx. 298, 2013 WL 1811278 (6th Cir. 2013) (unpublished) (copy attached) ("[t]he district court properly admitted [CAST member] Agent Horan's testimony because his specialized knowledge, experience, and training helped the jury to understand technical aspects of the government's proof and to determine a fact in issue"); *See also United States v. Weathers*, 169 F.3d 336, 339 (6th Cir. 1999) (allowing expert testimony based on cell site analysis); *see also United States v. Sepulveda*, 115 F.3d 882, 890-91 (11th Cir. 1997) (same).

12

Testimony about cellular phone technology and the ability to determine the general area where calls are placed and received has been accepted in courts throughout the country. As shown in the cases discussed below, law enforcement experts and engineers from cellular phone companies have testified in other trials for the purpose of showing the general location of someone using his or her phone through historical cell site records and the coverage area of cell towers handling those calls. In *United States v. Schaffer*, 439 Fed. App'x 344, 346 (5th Cir. 2011) (copy attached), the Fifth Circuit affirmed the denial of defendant's motion to exclude the expert testimony of a law enforcement agent in the field of historical cell site analysis. The Court found that this "field is neither untested nor un-established" and that the agent was well-qualified to "testify to his knowledge of historical cell site analysis and to use his knowledge to analyze the data contained in [defendant's] Verizon cell phone bill to determine the past locations of [defendant's] cell phone." *Id*. at 347.

In *United States v. Jones*, 918 F. Supp. 2d 1 (D.D.C. 2013), the district court found an FBI Agent and CAST member qualified as an expert in the "well-established" field of cell site analysis. The court further stated that the "use of cell phone location records to determine the general location of a cell phone has been widely accepted by numerous federal courts." *Id*. at 5.

Courts that have considered this issue are in agreement that cell phone technology is well understood and has been so for several years. Also, as described

13

above, courts have concluded that historical cell site analysis is admissible because the underlying methodology is sound and can reliably indicate the general location of the cell phone user. The field of cell site historical analysis is "well-established" scientific territory, is plainly relevant to the issues that will be before the jury, and should be permitted.

## Conclusion

For all of the foregoing reasons, this Court should enter an order (1) granting Timothy Sanders' motion to exclude certain specified evidence, (2) granting Timothy Carpenter's 404(b) motion, (3) denying Timothy Sanders' motion to suppress cell phone data, and (4) denying Timothy Carpenter's motion to exclude expert testimony.

Respectfully Submitted,

BARBARA McQUADE
United States Attorney

/s Kenneth R. Chadwell
KENNETH R. CHADWELL P39121
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9698
ken.chadwell@usdoj.gov

Dated: December 2, 2013

CERTIFICATE OF SERVICE

I hereby certify that on Monday, December 02, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Harold Gurewitz and S. Allen Early

        Respectfully Submitted,

        BARBARA McQUADE
        United States Attorney

        /s Kenneth R. Chadwell
        KENNETH R. CHADWELL P39121
        Assistant United States Attorney
        211 West Fort Street, Suite 2001
        Detroit, Michigan   48226-3211
        (313) 226-9698
        ken.chadwell@usdoj.gov