UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff               Case No. 12-cr-20218

    v.                             HON. SEAN F. COX

TIMOTHY IVORY CARPENTER,

               Defendant.

---

**United States' Sentencing Memorandum**

---

## I.    Introduction

Timothy Carpenter and a band of accomplices committed a spree of armed robberies of RadioShack and T-Mobile stores over a two-year period—terrorizing numerous victims. Carpenter led several of the robberies, and a jury convicted him of six counts of Hobbs Act robbery and five related gun counts. For his participation in the crimes, Carpenter received a 1,395-month sentence—1,260 months of which was mandatorily consecutive by statute. Following a successful appeal, Carpenter now appears for resentencing.

## II.    Facts and procedural history

Timothy Carpenter ("Little Tim"), with a rotating cast of accomplices, robbed at gunpoint at least seven RadioShack and T-Mobile cellphone stores over a two-year period. The robberies were cookie-cutter, with little variation. Typically, the leader, a role Carpenter filled for most of the robberies, selected a target, assembled a handful of guys, arranged for one or more guns, arranged for two cars or vans (frequently stealing one of them), purchased laundry-style bags from a local store, and assigned roles to the accomplices. The leader and one or two others stayed in one car parked across from the store and served as lookouts, and two or three guys forming the entry team parked at the store in the getaway car. The leader called the entry team using his cellphone to indicate that the coast was clear. At that point, the entry guys went in with guns drawn, brandished those guns to move employees and any customers to the back of the store where inventory was kept, opened locked cages, loaded the laundry bags with brand new cellphones in their original boxes, left the store within a few minutes, and escaped in the getaway car. The lookout and entry teams met up nearby, returned or disposed of the guns and stolen car, and fenced the stolen phones for cash, after which the leader paid the others according to their roles. Carpenter was the leader for most of these hits, always acting as a lookout, and never entered the stores. E.g., (R. 330: Trial Tr., testimony of accomplice Michael Green, 2826–2836 (first robbery), 2836–46 (second robbery), 2846–56 (third), 2857–68 and 2874–85 (fourth); R. 328: Trial Tr., testimony of

accomplice Adriane Foster, 2506–2525 (fourth), 2525–35, 2549–50 (fifth), 2535–2547 (sixth), 2550–62 (seventh)).

The entry team sometimes physically pushed or grabbed employees and customers when herding them inside. E.g., (R. 327: Trial Tr., testimony of employee Eugene Slade, 2326 ("I was being led by the first guy with a gun pressed against me"); R. 326: Trial Tr., testimony of employee Angela Boyce, 2276 ("They grabbed my customer around the neck like this" and "dragged her the rest of the way to the back room")). And the victims were understandably scared. E.g., (R. 327: Trial Tr., testimony of Slade, 2330 ("I was . . . scared for my life" because "I saw who they were"); *id*., testimony of employee Rasante McCullough, 2346 ("he makes me get on the ground and told me if I moved he would kill me"); R. 325: Trial Tr., testimony of employee Quianna Jeffries, 2052 ("I was scared because . . . a robbery can go any kind of way"); *id*., testimony of employee Derek Williams, 2040 ("I didn't want to hear a gunshot")).

The government prosecuted Carpenter for aiding and abetting the armed robberies. For each relevant robbery, the government charged Carpenter with two corresponding counts: first, violating the Hobbs Act, 18 U.S.C. § 1951(a), by aiding and abetting a robbery affecting interstate commerce; and second, violating 18 U.S.C. § 924(c) by aiding and abetting the use or carrying of a firearm during a federal crime of violence. Carpenter was prosecuted for six of the seven hits,

3

reflected in counts 1 (first robbery) and 2 (related gun use), counts 3–4, 7–8, 9–10, 11–12, and 13–14.

## A. Carpenter is convicted after jury trial and sentenced

The jury convicted Carpenter of six robbery counts (1, 3, 7, 9, 11, 13) and five gun counts (4, 8, 10, 12, 14), acquitting him only on the first gun count (2). (R. 249: Carpenter Verdict Form, 1338–1343). The district court sentenced Carpenter to a prison term of 1,395 months (116.25 years), based largely on the four mandatory, consecutive 25-year sentences for the subsequent gun charges and the mandatory, consecutive 5-year sentence on the first gun charge. (R. 301: Carpenter Judgment, 1602).

## B. Carpenter appeals his sentence

Carpenter challenged his sentence on appeal, arguing that in light of the ruling in *Dean v. United States*, 137 S.Ct. 1170, 197 L.Ed.2d 490 (2017), the district court erred when it sentenced him for his robbery convictions without considering the 1,260-month mandatory-minimum sentence to which he was already subject. The Court held that the district court, as a result of the recent holding in *Dean,* could consider the mandatory minimum sentence when fashioning an appropriate sentence for the robbery counts. Carpenter's sentences were vacated, and his case was remanded for resentencing. *United States v. Carpenter*, 788 Fed. Appx. 364, (6th Cir.), 2019 WL 6954341.

4

Resentencing was adjourned several times, as the parties and the Court awaited a decision from the Sixth Circuit in *United States v. Jackson*, 995 F.3d 522 (6th Cir. Jun. 30, 2021), regarding whether changes to § 924(c) sentencing enacted in the First Step Act might apply on resentencing in this case.  The Sixth Circuit held in *Jackson* that the provisions of the First Step Act regarding changings in § 924(c) sentencing only apply to defendants not yet sentenced as of December 21, 2018.  As Carpenter was first sentenced several years before that, he is to be sentenced under the prior law, mandating consecutive sentences for the multiple simultaneous § 924(c) convictions.

### C. The guidelines

The probation department has scored the guideline range as 1,395 to 1,428 months (including 1,260 of which is comprised of mandatory consecutive mandatory-minimum sentences).  The government agrees with the guideline calculations.

## III.   Section 3553(a) factors warrant a guideline sentence.

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a).  *United States v. Rita*, 551 U.S. 338 (2007).  While advisory, the Guidelines remain an important factor in fashioning a just sentence.  This is because "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation

of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350.  Moreover, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A. The nature and circumstances of the offense

Carpenter engaged in a highly organized, dangerous, and wide-ranging criminal spree. Exacerbating the crimes is that multiple innocent victims were assailed with firearms during the commission of the offenses. Carpenter and his cohorts put numerous lives at risk in their pursuit for illegal profit.

### B. The history and characteristics of the defendant

Carpenter's criminal history is set out in the PSR at ¶¶ 93-105, and includes a variety of adult felony and misdemeanor convictions, and numerous probation violations.

 The PSR describes in some detail his relationship with his family and health. *Id*. at ¶¶ 127-143. Prior to his incarceration, Carpenter maintained a minimal employment history PSR at ¶ 147.

While incarcerated Carpenter has not been a model prisoner, having been sanctioned multiple times for violating BOP rules and regulations. PSR at ¶ 134. The most serious of his violations include possession of a dangerous weapon, possession of heroin, and fighting. PSR at ¶ 134.

### C. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense

The crimes committed by Carpenter are serious—even more so in the instant case. Carpenter not only aided and abetted the armed robberies, he helped plan them, obtained some of the firearms used to threaten the victims, arranged for the getaway vehicles—including stealing those vehicles, and recruited additional individuals.

The advisory guidelines create a range so the courts can sentence similar defendants appropriately based upon the severity of their conduct. Carpenter would fall within the guideline range and a sentence within the guidelines would be a just punishment for the offense.

### D. Adequate deterrence and protection of the public

As the PSR states, "the defendant faces decades of incarceration in this matter. Therefore, any sentence imposed will serve as an adequate deterrent to the defendant and to others who may be considering becoming involved in similar conduct." PSR at ¶ 173. The government agrees with this statement.

### E.  Providing defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; kinds of sentences available and the need to avoid unwarranted sentencing disparities

The Bureau of Prisons has the expertise to classify and assign Carpenter to the appropriate facility.

## IV.   Conclusion

The United States recommends that a sentence within the guidelines—1395-

1428 months—is "sufficient, but not greater than necessary, to comply with the

purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vowell*,

516 F.3d 503, 512 (6th Cir. 2008).

Respectfully submitted,

SAIMA S. MOHSIN,
Acting United States Attorney

/s/ *Blake S. Hatlem*
Blake S. Hatlem
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9613
blake.hatlem@usdoj.gov
(P58969)

Date: September 17, 2021

## **CERTIFICATE OF SERVICE**

I certify that on September 17, 2021, I electronically filed the foregoing

Sentencing Memorandum with the Clerk of the Court using the ECF system which

will send notification of such filing to the following:

Harold Z. Gurewitz

s/*Blake S. Hatlem*
Blake S. Hatlem
Assistant U.S. Attorney
United States Attorney's Office